All right. Good morning. Good morning, Your Honor. As I told the other lawyers, today is the first day of school for Judge Scudder and for me. Judge Ripple will be hearing the cases via recording and cannot be with us today. So, you are case number two, Michael Moss v. United Airlines. And we are appeal number 20-3246. And we're going to start with you, Mr. Stonebarker. Thank you, Your Honor. And good morning, Your Honor. My name is Michael Moss. And I'm going to be talking about the rights and benefits of military service members under USERRA. The specific benefit that we're going to discuss, in this case, is the right to accrue sick time while on periods of military leave. And as this court has previously recognized, the importance and purpose of the statute of USERRA is to encourage military service by minimizing the disadvantages to civilian careers, to minimize disruption in the lives of service members when called upon to serve our country, and, of course, to prohibit discrimination of service members. And as this court has previously found, in both the to effectuate its purposes, as just stated. Now, I take your point that accumulated sick time can serve as a longevity incentive for an employee. But what should we make of the fact that all pilots accrue sick time at the same rate, regardless of the length of their tenure, and there is a hard cap on the number of hours of sick times that one can accrue. And one doesn't get any pay or credit for unused sick time when leaving the company. That's right, Your Honor. The United States Supreme Court and this court has recognized that when determining whether a benefit is seniority based, that the court must look to the real This is clearly a future-oriented longevity incentive benefit because it provides economic security during periods of illness that will occur in the future, providing income when that employee is unable to work and earn money for their family. And so the cap of the 1300 hours is a cap relating to sick time accrual hours as it accumulates during the employment and the continued affiliation with that company. I know that all companies have different policies and the terms and conditions, including with respect to accrual rates and what have you, are all the United States has accepted that view of sick pay? The view of sick time when addressed by appellate courts, Your Honor, has been in the context of lumping that analysis with vacation time. How about district courts? What are the district courts that have looked at sick pay, either in isolation or in combination with vacation pay and held that it's a seniority-based benefit within the meaning of Section A? Your Honor, I'm not aware of any specific district court that has made the express finding relating to sick time accrual alone as a seniority-based benefit. And the reason for that, in my opinion, is that the courts have looked at this issue in conjunction with vacation time, as was the case in, I don't want to butcher this, but the case in Vipiani, I'm sorry, Lipani. And in that case, it was a situation where the sick time accrual was tied to vacation, that if it wasn't utilized, it became vacation time. And it was paid out at the termination of employment. Whereas the specific facts here, it was not paid out of termination of employment and was not forfeited each year either. It continued to accumulate. I'm sorry, Your Honor. No, no, no, not at all. I'm sorry. Isn't the purpose of sick time like vacation time? To give an employee who needs a respite the opportunity... I'm sorry. It looks like Your Honor is frozen. Yeah, we'll pause the clock. I'm in the courtroom in Chicago. It looks like Judge Roper may have frozen on her end. So just hold on one second. Oh, I think I came back. Yeah, we can hear you just fine. Judge Roper, when your screen froze, I just paused the clock. Thank you. Thank you. For some reason, it's saying that my internet connection is unstable. Well, at least it isn't saying I'm unstable. Okay. But what... Your Honor, I think I understand your question. In other words, you see, in that sense, it seems to be more about the ability of a worker to preserve his job and his ability to work in near term, rather than providing an incentive for him to or her to remain, you know, to remain with the company in the long run. It just... Yeah. Oh, yes, Your Honor. If you're done with your question, I'd love to respond to that point. So for vacation time, this is a benefit that accumulates during that year, must be used during that year. It's a voluntary respite from work, and is not akin to sick leave when it's an involuntary situation where one can't work. I believe that sick time accrual is more akin to the supplemental unemployment benefits that were at issue with the Supreme Court in the Coffey case. And it's in all squares with that scenario, in that in the Coffey case, it was clear that the concern was that it was a situation to protect against future unemployment and the to the longevity of service. And, you know, that all benefits, they're somewhat tied to, of course, the employment with the company. You could probably hear from my question. I'm a touch skeptical on the subsection A argument. But I must say, I think the argument you have under B-1 is very serious. And the concern that I have is that you may have waived it. And the reason that I have that concern is not because in the district court, you weren't arguing that six pay is comparable to other forms of pay, but rather that the precise argument that you advance on appeal that the legacy Continental, that's my shorthand, legacy Continental and legacy United pilots were treated differently. I don't see where you put that argument. You pled it, I think. Yes. But the case proceeded beyond the pleadings, as we all know, where did you put that argument in front of Judge Durkin? Can you can you point me to somewhere in your summary judgment papers? Sure, Your Honor. And just to address that statement, I think it's really important to understand the context of the summary judgment motions, which were cross motions. In plaintiff's motion, we argued specifically that this is a seniority based benefit. Whereas in opposing defendant's motion, we argued both that it was a seniority based benefit, and that it was a benefit that would accrue by virtue of subsection B-1B as a non-seniority benefit. And, and we also argued some other issues in that opposition, including preclusion and pension issues in that 15 pages we had to work with. As you, as you indicated, Your Honor, I'm sorry. Yeah, forgive me for pressing you where exactly though, in your opposition, did you advance the argument that you're now advancing on appeal? Do you have the And just to be clear, you're correct relating to the specific issue that leave was taken by United Military Pilots and that they accrued the sick time benefit during a nine year stretch during this class period, whereas three of those years were at the same time that the Continental Pilots were not right. This was a major factor in supporting the seniority based argument. It's a factor that was not put side by side on the comparative leave argument by virtue of being self-evident, and that we did in fact plead in our complaint that as an alternative to seniority, that because military, I'm sorry, the benefits were provided to some pilots taking military leave, but not others, then in that scenario, that it supports it being a seniority based benefit because there was no work being performed during that time period. And again, I believe it's self-evident that the military leave taken by some employees is directly comparable to military leave taken by the others. But you're correct. In the specific analysis of comparing leave to leave, we were focused on association leave of absence and other leaves such as long-term sick leave, whereby benefits would continue even without a work requirement. Your Honor, I will be happy to ask any more questions or follow up on anything there. It looks like I have about four, I'm sorry, four minutes and 20 seconds left for rebuttal. I'd like to preserve some rebuttal time. I did. I think it would be best to save it. Okay. Thank you, Your Honor. Thank you. All right. Mr. Metlisky. Your Honor, thank you very much. May it please the court, Anton Metlisky for United Airlines. I was going to start, Your Honors, with the seniority benefits point, if you'd like me to start with B, that would be fine too. You start wherever you want. Okay. Well, just quickly on the seniority benefits point. I think it's clear that the issue in the case is whether sick pay is a seniority-based benefit or a non-seniority-based benefit. That is whether it's principally in its real nature a reward or incentive for longevity or simply compensation for work. It seems to me that that question was all but answered by the Supreme Court in Foster, which held that vacation pay is a non-seniority benefit because it provides compensation in the form of a respite from the work requirement and so too with sick pay, which provides a respite from the work requirement whenever an employee is sick, which can happen, of course, at the end of a career, but it could also happen at the beginning of a career or anywhere throughout. Courts have uniformly... Go ahead, Your Honor. Sorry. No, please. I was just going to say courts have uniformly held that sick pay is a non-seniority benefit. USERRA's legislative history reflects that understanding in the form of a letter from a DOL official, Department of Labor official, to Congress and the very union that represents the plaintiffs here so advises its members and the particulars of the sick pay benefit under the United CBA really confirm the point because they make clear that sick pay isn't principally an incentive or reward for longevity. So, for example... Go ahead, Your Honor, please. Would it make a difference, do you think, if United Pilots were given some type of credit for any unused sick time, be it payment for those hours when they left the company or credit toward retirement eligibility? Would that type of arrangement make the accrual of sick time a longevity incentive? I doubt it, Your Honor. Vacation pay typically gets paid out at the end of employment. The reason for that doesn't have anything to do, I don't think, with seniority or non-seniority. It's really a way of preventing gaming of the system. Somebody goes away for an incentive to do that. I'm not sure. It seems like it would be more of an incentive to stay if there was a payout at the end. You bank it so that you know you were going to get something at the end of your career. Here, you don't know, right, because you can only get it if you get sick. So, I think there would be more of an argument, but I think the problem, a little bit of a problem with the doctrine generally, is every benefit is in some sense creates an incentive for longevity. Even a wage, which is obviously compensation for work, the longer you stay, the more you get paid. And likewise, every benefit is in some sense compensation for work, because after all, why else are they giving you the benefit? That's why the Supreme Court is focused on the real nature of the benefit. What is it really for? And what sick pay is really for is to allow an employee to not come to work when they're sick whenever that happens. Of course, there's no benefits in Alabama power. You start accruing sick pay on the first day of work at United. And not only that, there's an interesting feature of the sick pay benefit. We didn't really highlight in the briefs, but I think it's worth mentioning, which is on your first day of work, right after you come out of training, you're given an advance of 60 hours, which is one year's worth of accrued sick pay. Now, as you work, you pay down that advance so that at the end of the first year, you still have 60 hours. But why would they give you an advance of 60 hours on your first day of work? Because the point of the benefit is to allow you not to come to work whenever that happens, including in your first year, right? So it seems to me fairly obvious that this isn't in its principal nature, a longevity benefit. Now, I know, Judge Scudder, if you leave the company, you can't cash it, can you? It's gone. That's right. It's gone. Okay. This is going to seem like a digression. But I direct this question to you as much as I do Mr. Stoneberger. One concern that I have after the Supreme Court's decision in TransUnion versus Ramirez, the standing case, okay, is I want you to assume, I know this is not the way you want the case to come out. I want you to assume that you lose on appeal and we remand. I have a concern about the breadth of the class definition vis-a-vis Article 3 standing. The class definition, as you gentlemen know, goes back and picks up employees dating to 2005 and therefore employees who no longer, by the terms of the definition, no longer work at the company. If they no longer work at the company, my question is, under this particular are we sure that all class members have standing and what redress would they have? In other words, is this a situation where the plaintiff is asking for a check to be written to all former employees? I believe there's damages. I believe they have a damages claim. I mean, I don't know. But you all argued this at the class certification stage. You argued this point in terms of trying to defeat a broad class certification like this. And it seems to have disappeared. And I know that there's no briefing on Article 3 standing. I got that. I totally understand that. What I'm concerned about is if your adversary prevails and we remand, might we not want the district court to take a look at the definition of the certified class in light of transunion? I mean, absolutely. The court's discussion about the interplay of standing doctrine and Rule 23 class certifications? I mean, if you remand, I think any argument would be open, including obviously in light of transunion standing issues. I'm not sure exactly how that would play out. But I do think there may be standing problems, even, for example, for legacy United pilots who couldn't possibly have a damages remedy because military leave accrued, excuse me, sick leave accrued throughout the entire period of military pay. So damages would be, excuse me, of military leave. So that hasn't been briefed ever. And I hope it doesn't matter because I think that the decision should be affirmed on the merits. So the substantive issue that really concerns me is the B1 issue. Right. Because I got to tell you, I'm not so sure you have the better of the argument at all under the language of that provision. So let me see if I can give you a few arguments for why we do. But first, I think there's a sort of insurmountable waiver problem. I think my colleague conceded that this wasn't raised in the summary judgment briefing at all. And so I think there's no reason to consider the question, especially because it's completely novel. Right. There's never been any briefing on it and no case has ever considered it. So this seems like a strange case to get out of a waiver. The second reason that I don't think it matters is because there's a case-specific reason where even if it were right as a general matter that you could compare two different military leaves under B1, I think that's not true in this case for two reasons. Because remember, the context here is two different employers and two different bargaining units entered into two different CBAs. And then the companies merged and there was a grace period where the prior CBAs still applied when the merger had already closed. And so there are two features under the text to B1 that I think make the statute not apply. First of all, the comparator group has to be of the same seniority status and pay as the person on military leave. And I don't think that employees in different work groups have the same status. It would be just like pilots and mechanics, for example. Even if they have the same seniority, the same pay, they wouldn't have the same status because they're governed by different employment policies and contracts. So that's one. Second, the B1B tells you that what you're looking at in terms of the comparator leave is leave established by the employer. That means one employer. Right. And here, the employment contracts were established by two different employers. One was Legacy Continental. One was Legacy United. And of course, there was a grace period during which those companies had merged. But I've never heard of any doctrine that says that you're not allowed to sort of have an integration period after a merger under USERRA. So those are case-specific reasons why I think the claim would lose even if my colleague was right about the issue, Judge Scudder, that I think you're worried about, which is whether the comparator group has to be of non-military leaves. And I think we're right about that, too. So first of all, I think that's just how every case has ever considered the question. Rogers in the Fifth Circuit is an example. That says that the statute requires employers to treat employees taking military leave equally, but not preferentially, in relation to peer employees taking comparable non-military leaves. Or take the legislative history, the Senate report, to the extent that's something you care about. It says the provision was meant, quote, to codify court decisions that have interpreted current law as providing a statutorily mandated leave of absence for military service that entitles service members to participate in benefits that are accorded to other employees. That's the Senate report 103-158 at 58. Do you think hypothetically ABC Airlines could set a different sick pay accrual policy for two pilots that today went on military leave? One receives a more favorable accrual because they're serving in the Army, and the second receives a less favorable because she's serving in the Navy. So I think that would not be a 43-16-B problem. It might be a 43-11 problem, because that's a general discrimination on the basis of military status provision. But I do not think that would be a 43-16-B-1 problem, because that, it seems to me, and the last thing I was going to say was the structure of the statute. So the history of the statute, the purpose of the statute, and the structure of the statute, the way it's set up, the beginning of the statute, B-1, B-1A, talks about employees on military service, and then B-1B talks about basically other employees. So it seems to me that the way the structure is set up just aligns with its purpose of dealing with making sure that military service members are not disadvantaged vis-a-vis civilian employees. Other provisions might take of the hypo you gave me, but it's not this one. If the court has no further questions, I'm happy to rest on the briefs and give back the remainder of my time. I do have a question. Sure. Can United Pilots use sick time for purposes of FMLA leave? Because if so, that might add to the value of accrued sick time as a longevity incentive. They can only use sick leave when they themselves are sick, so under the CBA. But even if that were right, Your Honor, I think part of the problem with this doctrine is, as I said, every benefit has a little bit of both. And what you're really looking for is the basic nature of the benefit. And again, the basic nature of the benefit is to give a respite from the work requirement when you're sick. And I think one thing that makes that clear is that, again, there's no vesting cliff. Customarily, with real incentives for longevity, you don't get them if you stay a year or if you stay two years, right? You have to stay a while to get them, whereas sick leave starts accruing at the beginning precisely because you can get sick anytime, as we all have found out in the last short while. So I think, as Foster says, you can set up a vacation pay benefit and make it a seniority benefit if you just made it accrue with association of the company having nothing at all to do with work. So you could do the same thing with a sick pay benefit. You could say you don't accrue sick pay until you've worked here five years, but why would anybody ever do that? It would be contrary to the whole nature of the benefit because the nature of benefit is we want to give you a respite from the work requirement when you're sick. And by the way, please don't come in when you're sick. We don't want you coming in and getting everybody else sick, right? And that has nothing to do with seniority. It has nothing to do with longevity. It has to do with a respite from work, just as vacation does. Thank you, Your Honor. Okay. Mr. Simberger, four minutes, 18 seconds. Okay. Thank you. And I'll try to talk too fast, but I do want to respond. Counsel just stated that if a benefit accrues by virtue of that benefit of the benefit accrued during a continued association of the company, then that would be seniority-based. That is what happened here. All the CBAs provide for if an employee was continuously employed and was available or at sick leave, then that benefit would have continued to accrue. Now that's foster. Supreme Court's opened that door. Even on a vacation time, it's not categorically excluded. Here on sick time, each of the factors weigh in that seniority-based benefit because it's to protect against a future event when an employee becomes ill and is unable to work. If an employee comes back from long-term military leave and gets sick and an employee in the same status and was hired the same week as him and doesn't go on military leave, that employee that didn't go on military leave is in a far superior position whereby that employee can get paid sick time while the military employee cannot and will go into an unpaid status much more quickly than the non-military employee. That's on the seniority base. Now leading into a non-seniority-based analysis, which we don't even have to reach if we reach the seniority conclusion. In a non-seniority-based analysis, United would be flipping the statute on its head in order to ability to discriminate against some employees on military leave while allowing others on military leave to accrue benefits. That is what's occurred here. For nine years, the benefit accrued for United pilots. The benefit did not accrue for Continental pilots. To address Judge Scudder's concern about Article 3 standing, in my opinion, by virtue of the United pilots getting an accrued benefit that then all pilots on military leave should get that same benefit during the entirety of the class period and by not receiving that benefit have incurred harm and therefore have Article 3 standing for the entirety of the class period. However, as Judge- The only way, I don't want to go too far down this road, but the only way that somebody would have incurred harm, it seems to me, is if they had a zero balance in their sick pay account and they needed to take a sick day. If they had a balance of 50 hours, all the sick hours are these class members, a current employee and a former employee as the same, given where the Supreme Court has put us on Article 3 standing and what it said vis-a-vis class certification and transunion, for better or for worse. Well, just to address that, Your Honor, if an employee became sick and did not have the Alabama power, the court made clear that the Congress did not intend for possibilities to defeat a veteran's seniority rights. Having said that, a trial judge always has the ability to narrow or redefine a class definition. If this court was to send the matter back, it is possible that the court could look at the 2010 through 2013 time period and put that side by side, that same time period, same employees of the company, whereas during that exact same time period, some were taking military leave, accruing benefits, others were not accruing benefits on the same type of leave. See, I'm out of time. Happy to answer any further questions. And otherwise, I really appreciate the court's consideration on this very important matter. And we appreciate both of you. The case will be taken under advisement. Thank you, Your Honors. The court is going to take a 10-minute break. Thank you so much. Hello.